**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| NICCOLE EBERHART, Plaintiff, | CASE NO. 3:25-CV-02190-JRK |
| vs. | JUDGE JAMES R. KNEPP, II |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | MAGISTRATE JUDGE DARRELL A. CLAY |
| | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Niccole Eberhart challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Oct. 15, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

In March 2023, Ms. Eberhart applied for DIB and SSI, alleging she became disabled on March 1, 2021, due to fibromyalgia, migraines, degenerative disc disease, gastroesophageal reflux disease (GERD), generalized anxiety disorder, and major depressive disorder. (Tr. 174, 325, 332). After her claims were denied initially and on reconsideration, Ms. Eberhart requested a hearing before an administrative law judge. (Tr. 172-73, 184, 195, 248). On June 13, 2024, Ms. Eberhart (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 34-65). On July

23, 2024, the ALJ determined Ms. Eberhart was not disabled. (Tr. 17-35). On August 12, 2025, the Appeals Council denied Ms. Eberhart's request for review of the decision, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.1581, 416.981). Ms. Eberhart timely filed this action. (ECF #1).

## Factual Background[1]

### I. Personal and Vocational Evidence

Ms. Eberhart was 41 years old at the alleged onset of disability and 44 years old at the hearing. (*See* Tr. 162). She graduated from high school and attended two years of college. (Tr. 398). Ms. Eberhart previously worked as a vending machine attendant, administrative clerk, accounting clerk, and file clerk. (Tr. 65-66).

### II. Administrative Hearing

During the hearing, Ms. Eberhart's counsel requested to admit into evidence a redacted copy of the Appeals Council's decision in another disability claimant's case defining the term "superficial interaction." (Tr. 47). In his opening statement, counsel provided that Ms. Eberhart has chronic pain in her lumbar spine due to multi-level disc bulges with stenosis and migraine headaches, depression, and anxiety that limit her abilities to (i) maintain attention, concentration, and focus as well as (ii) interact with others. (Tr. 49-50). Counsel argued Ms. Eberhart should be limited to brief and superficial interactions, consistent with the state agency psychologists' opinions, where "superficial interaction" means "no more than shallow or cursory interactions," aligning with the Appeals Council's definition of the term it provided in an unrelated claimant's

[1] Ms. Eberhart's appeal focuses on the ALJ's decision not to include a limitation to "brief and social interaction" in the residual functional capacity assessment. As such, I omit a comprehensive summary of the medical evidence because it is not necessary to resolve her claim.

disability appeal. (Tr. 50). Counsel maintained that if Ms. Eberhart were limited to brief and superficial interactions under that definition, she could not get through any required training period or sustain full-time, competitive work activity. (Tr. 50).

Ms. Eberhart then testified about how her conditions prevent her from working. (Tr. 67). Primarily, being in the workforce causes her so much stress that she has anxiety attacks and cannot sleep, preventing her from focusing on her work. (*Id.*). She becomes stressed by deadlines, paranoid feelings that others are talking behind her back or that she might lose her job. (Tr. 70). She needs an hour to an hour-and-a-half to recover from an anxiety attack. (Tr. 68). She also experiences migraines two to three times a month if she is not stressed and two to three times a week if she is stressed. (Tr. 70). Her migraines last between 12 and 20 hours. (Tr. 73).

Ms. Eberhart struggles being around the same people over and over because it means she has to "let them get to know [her]" and explain why she acts the way she does. (Tr. 71). She leaves the house "as little as possible," every two to three days. (Tr. 74).

Ms. Eberhart takes anti-anxiety medications, antidepressants, and medications to prevent and abort migraines. (Tr. 68). Side effects include nausea, diarrhea, and grogginess. (*Id.*).

Ms. Eberhart had back surgery but still experiences "crippling" back pain about three times a month. (Tr. 69). She has fibromyalgia that causes leg pain at least one day a week. (Tr. 75). She can sit for about 40 minutes to an hour before she must change positions, walk for 25 minutes before her legs begin to feel numb, stand for 25 minutes before she must change positions or sit down, and lift about 25 pounds. (Tr. 69-70). She can perform some household chores "here and there," but her daughter and boyfriend do most of the work, including cooking meals. (Tr. 76).

After hearing Ms. Eberhart's testimony about her past jobs, the VE classified her past work as vending machine attendant, administrative clerk, accounting clerk, and file clerk. (Tr. 65-66). She testified that an individual of similar age, education, and experience to Ms. Eberhart, who is limited to the residual functional capacity (RFC) the ALJ determined applicable in this case, cannot perform Ms. Eberhart's past relevant work but can work in other unskilled positions including merchandise marker, routing clerk, and mail clerk. (Tr. 76-78). On questioning by Ms. Eberhart's counsel about the effect of limiting her to no more than "shallow and cursory" interactions with others, the VE stated  an individual who can tolerate occasional interaction with others but cannot respond to criticism or tolerate customary meetings and performance reviews cannot work, even in unskilled positions. (Tr. 80-81).

## STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

> 4. What is claimant's residual functional capacity and can claimant perform past relevant work?
>
> 5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**THE ALJ'S DECISION**

At Step One, the ALJ determined Ms. Eberhart had not worked since March 1, 2021, the alleged onset date. (Tr. 21). At Step Two, the ALJ identified several severe conditions: chronic ethmoid sinusitis, migraine, stimulant use disorder, degenerative disc disease of the lumbar spine, fibromyalgia, type 2 diabetes, obesity, generalized anxiety disorder, major depressive disorder, and borderline personality disorder. (*Id.*). At Step Three, the ALJ found Ms. Eberhart's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 22).

At Step Four, the ALJ determined Ms. Eberhart's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the individual can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The individual can occasionally balance, stoop, kneel, crouch, and crawl. The individual can tolerate occasional exposure to fumes, odors, dusts, gases, and poor ventilation. The individual can tolerate occasional exposure to hazards. The individual can tolerate

> occasional interactions with coworkers, supervisors, and the public. The individual can carry out simple instructions. The individual can tolerate occasional changes in a routine work setting.

(Tr. 28). The ALJ concluded Ms. Eberhart cannot perform her past relevant work. (Tr. 33). At Step Five, the ALJ determined Ms. Eberhart could perform other work in the national economy, including as a merchandise marker, routing clerk, and mail clerk. (Tr. 34). Thus, the ALJ concluded Ms. Eberhart was not disabled. (*Id.*).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the

evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Eberhart challenges the ALJ's decision not to adopt the state agency psychologists' opined limitation that she is limited to brief and superficial interactions with others. (ECF #8 at PageID 2638).

At Step Four, the ALJ assesses a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). As part of that assessment, the ALJ must review all medical opinions and prior administrative findings and explain their persuasiveness. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see also Reeves v. Comm'r of Soc. Sec*., 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions," those being the two most important factors. *See id*. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"; consistency is "the extent to which the opinion is consistent with evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 F.R. 5844-01, 5859, 2017 WL 168819 (Jan. 18, 2017). The ALJ's explanation should "generally include[ ] an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or prior administrative medical finding is with other evidence in the claim." *Id.*; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors").

The ALJ need not adopt a medical source's opinions verbatim nor adopt the psychologist's limitations wholesale. *Reeves*, 618 F.App'x at 275. But "if the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The reasons for the ALJ's conclusions must be stated in a manner permitting the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011). If the ALJ discusses both consistency and supportability and substantial evidence supports the discussion, then the reviewing court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

The ALJ reviewed the psychologists' opinions at two points in the decision. First, the ALJ noted the psychologists cited evidence from the record but "did not sufficiently support their administrative medical findings with an explanation or analysis that described what evidence supported the limitation." (Tr. 25). Later in the decision, the ALJ specifically discussed the limitation to "brief and superficial interaction":

> Turning to the State Agency psychological consultants' prior administrative medical findings, some of the language used in the prior administrative medical findings—such as brief and superficial—is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity assessment. The undersigned finds these prior administrative medical findings persuasive only insofar as they indicate that there are indeed social limitations. Limiting the claimant's social interactions is consistent with the claimant's testimony that she was paranoid at work that someone talked about her, that she felt like she had to let people that she sees multiple times in and get to know her, but that she could be out in public. The record does not confirm that all social limitations should be precluded, given her participation in a ladies' dart league, her June 2022 report that she had many friends, her March 2024 report that she regularly socialized outside of the home, and objective documentation that the claimant was not in apparent or acute distress and was cooperative. Accordingly, the undersigned limited

> the claimant to occasional interactions to minimize social stressors that could exacerbate her symptoms.

(Tr. 32) (internal citations omitted).

Ms. Eberhart argues the ALJ erred in evaluating the state agency psychologists' opinion that she is limited to brief and superficial interactions with others. (ECF #8 at PageID 2638). Described above, the ALJ did not adopt the state agency psychologists' opined limitation but restricted her to "occasional interaction" with others. According to Ms. Eberhart, the ALJ's explanation that "brief and superficial interaction" is "not vocationally defined and thus, does not adequately articulate the limitation for use in [an RFC] assessment," is not an adequate explanation and should be rejected. (*Id.* at PageID 2639). Ms. Eberhart begins by noting the applicable regulations require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence" were considered and resolved, and "if the ALJ's determination conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." (*Id.* at PageID 2639) (citing SSR 96-8p, 1996 WL 374184, at *7). She reasons that although the Commissioner has not defined "brief" or "superficial," a restriction to "brief and superficial interaction" concerns the quality of interactions and is distinct from "occasional interaction," a restriction concerning the frequency of interactions with others and so the ALJ was obligated to explain why the limitation to "superficial interaction" was not adopted. (*Id.* at PageID 2640). In response, the Commissioner contends the ALJ properly considered the supportability and consistency factors in evaluating the state agency psychologists' opinions and adequately explained that the evidence does not support the limitation to "brief and superficial interaction." (ECF #9 at PageID 2656-57). Anticipating this argument, Ms. Eberhart claims the ALJ did not explain how the evidence the ALJ cited was inconsistent with that limitation. (ECF #8 at PageID 2641).

After reviewing the evidence, the applicable regulations, and the parties' arguments, I conclude (1) the ALJ properly articulated how she considered the supportability and consistency of the state agency psychologists' opinions; (2) a limitation to "occasional interaction" does not conflict with a limitation to "brief and superficial interaction," so the ALJ did not have to explain why she adopted one limitation over the other; (3) if an explanation was necessary, the ALJ's explanation was sufficient ; and (4) even if the ALJ erred in adopting "occasional interaction" over "brief and superficial interaction," such error was harmless because no evidence from the VE establishes that a limitation to brief and superficial interaction would direct a finding of disability.

**I. The ALJ properly evaluated the state agency psychologists' opinions.**

First, the ALJ properly evaluated the supportability of the psychologists' opinions by explaining they did not support their findings "with an explanation or analysis that described what cited evidence supported the limitation." (Tr. 25). That is a proper consideration in evaluating the supportability of medical opinions. *See Bechtloff v. Bisignano*, No. 5:25-158, 2026 WL 267779, at *4-5 (E.D. Ky. Feb. 2, 2026) (concluding the ALJ's explanation that state agency psychologists "included no rationale for their specific findings" reflects proper consideration of the supportability factor); *Kirkland v. Kijakazi*, No. 3:22-cv-60, 2023 WL 3205330, at *11 (E.D. Tenn. May 2, 2023) ("In a case such as this, in which the medical provider sets forth little to no explanation for the ALJ to, in turn, critique, the Court finds it sufficient that the ALJ stated the physician failed to provide any accompanying explanation.") (citation and footnote omitted); *Rodriguez v. Comm'r of Soc. Sec.*, No. 21-cv-752, 2022 WL 3973658, at *3 (N.D. Ohio Sept. 1, 2022) (finding the ALJ sufficiently articulated the supportability factor in discounting the opinion by

noting "that [the physician's] opinion failed to 'provide an explanation with documented support' for his conclusion").

The ALJ also properly considered the consistency of the psychologists' opinions with respect to Ms. Eberhart's ability to interact with others. The ALJ determined Ms. Eberhart's testimony establishes that social interaction was limited to some degree but the psychologists' limitation to "brief and superficial interaction" was inconsistent with Ms. Eberhart's reported social activities, including participating in a dart league and regularly socializing out of the house with a number of friends, and inconsistent with mental status examination findings showing she was cooperative and not in distress. (Tr. 32). Taken together, the ALJ's analysis properly considers the supportability and consistency factors. The ALJ explained how the state agency psychologists' opinion concerning social interaction lacked supporting rationale and was inconsistent with her testimony and her reported social activities.

## II. Ms. Eberhart has not shown that "occasional interaction" is inconsistent with "superficial interaction.

I now turn to Ms. Eberhart's arguments about the distinction between "occasional interaction" and "superficial interaction." As Ms. Eberhart correctly notes, some district courts within the Sixth Circuit have determined that "occasional interaction" differs from "superficial interaction." These district courts "have adopted a fixed vocational definition of 'superficial interactions,' and 'presumed' that this definition is 'qualitatively inconsistent with occasional' interactions." *Stephen D. v. Comm'r of Soc. Sec*., No. 1:21-cv-746, 2023 WL 4991918, at *6-8 (S.D. Ohio Aug. 4, 2023) (collecting cases), *report and recommendation adopted*, 734 F.Supp.3d 729 (S.D. Ohio May 16, 2024). These courts define "occasional" as limiting the quantity of time spent interacting and "superficial" as limiting the quality of those interactions. *See, e.g., Hutton v. Comm'r*

*of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *4-5 (S.D. Ohio July 9, 2020), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Lindsey v. Comm'r of Soc. Sec.*, 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan 8, 2019). They reason that because the terms are defined differently, an ALJ must sufficiently explain why she translated an opined "superficial interaction" limitation into "occasional interaction" in the RFC. *See Stephen D.*, 2023 WL 4991918, at *6-8 (compiling cases). According to these courts, because "'superficial interaction' is a well-recognized, work-related limitation," the ALJ's explanation that she declined to adopt such a limitation because "superficial" is vocationally vague or not a vocationally relevant term is insufficient. *Hutton*, 2020 WL 3866855, at *5; *see also Stephen D.*, 2023 WL 4991918, at *6-8 (collecting cases). Nevertheless, I conclude that "occasionally" does not create a sufficient conflict with "superficially" so as to require the ALJ to explain adopting a limitation to occasional interaction over a limitation to superficial interaction because "time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions." *Stephen D.*, 734 F.Supp.3d at 738. The court's rationale in *Stephen D.* is persuasive:

> "Superficial" and "occasional" are of course two different words, and they have at least somewhat different meanings. "Superficial," in the most relevant context here, means "concerned only with the obvious or apparent: shallow." Superficial, Merriam-Webster's Online Dictionary, https://perma.cc/5KR8-NXQD. "Occasional," by contrast, means "occurring, appearing, or taken at irregular or infrequent intervals." Occasional, Merriam-Webster's Online Dictionary, https://perma.cc/BRY8-RH8W. And when modifying "interactions"—*i.e.*, an individual's social interactions—one could understand that the colloquial use of those adjectives are different. We all intuitively know that when someone says, "I know her superficially," he of course means that he does not know her well; while saying "I see her occasionally," communicates that he sees her on an infrequent basis. As the opinions ascribing a significant difference to the two note, the former relates to the quality of the interaction, while the latter relates to the quantity or frequency of it.

> Social Security regulations bear out, at least to a certain extent, that "occasionally" refers to quantity. Under SSR 83-10, as a general rule, using "occasionally" in connection with a claimant's limitation means up to one-third of the time he is performing work-related duties interacting with co-workers. *See* 1983 WL 31251, at *5. And under that view, of course, "occasionally" would appear to be a measure of quantity, not quality.
>
> But the Court nonetheless concludes that "occasionally" does not create a sufficient conflict with "superficially" when applied to "interactions," such that the ALJ would be required to explain that change. As Magistrate Judge Bowman aptly put it in her Supplemental R&R, "[an] emphasis on the 'qualitative' nature of the vocationally-undefined adjective 'superficial' as if in conflict with the defined 'quantity' of interaction . . . ignores the reality that time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions." The Court agrees. Assuming that "occasionally" means limiting a claimant to jobs where he spends no more than one-third of his time performing work-related activities interacting with others likely also means he lacks time to interact socially on a non-superficial level.
>
> Beyond that, the Court is not convinced that, as applied to mental RFC limitations, the word "occasionally" carries the same strict "up to one-third of the workday" meaning that it does when used in connection with physical limitations. *See Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) (rejecting argument that occasional interaction means up to one-third of workday, and noting "the DOT definition [of occasional] does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert various amounts of physical force"). For example, in the same sentence that the ALJ found the "occasional interaction" limitation, the ALJ also found that Stephen could handle "occasional changes in work setting." The Court struggles to believe that this means "changes in work setting occurring up to one-third of the workday." Rather, the usage in this context seems more akin to the colloquial usage of the term occasional, as meaning 'from time to time,' as *Reynolds* suggests. *See* 25 F.4th at 474-75.
>
> Either way, the Court agrees that the modifier "occasionally," whether it specifically means one-third of the workday or generally means from time to time when applied to "interactions," refers to the duration or frequency of the interactions, and not directly to their quality. But when a person is limited to engaging in only short and infrequent interactions, that strongly correlates, as a practical matter, with interactions that are superficial, as well. Given the correlation between the two, the ALJ's decision to use "occasional" instead of "superficial" as applied to "interactions" in calculating the mental RFC suggests that no real conflict exists. And, in turn, that means there is no "inconsistency" that the ALJ must explain.

*Stephen D.*, 734 F.Supp.3d at 737-38 (internal record citations omitted).

**III. The ALJ adequately explained why she did not adopt the limitation to "brief and superficial interaction."**

Even if the Court finds that "occasional interaction" and "superficial interaction" are distinct terms in the vocational context, the ALJ did not err because the ALJ adequately explained why she did not adopt the state agency psychologists' limitation. First, the ALJ emphasized that "brief and superficial" is not a vocationally defined term, limiting its value for use in an RFC assessment. (Tr. 32). In other cases considering this issue, courts have found similar explanations for not adopting a "superficial limitation" to be sufficient. *See, e.g., Culbertson v. Comm'r of Soc. Sec.*, No. 1:24-cv-1847, 2026 WL 696554, at *5 (N.D. Ohio Mar. 12, 2026). Second, the ALJ reasoned that Ms. Eberhart's testimony established the need for some limitation in social interaction, but a limitation to brief and superficial interaction was inconsistent with her participation in a dart league, regular social interaction in public, and objective findings that "sometimes reflect[ed] an abnormal mood" but largely described her mood as normal or euthymic and showed she was cooperative and not distressed on examination. (Tr. 32) (citations omitted). The ALJ thus clearly stated why she adopted a limitation to "occasional interaction," and cited evidence in the record to support her findings, including Ms. Eberhart's testimony, statements to her medical providers, and objective medical findings.

**IV. The ALJ did not err in rejecting an unrelated Appeals Council order as evidence not relevant to Ms. Eberhart's claim.**

Last, Ms. Eberhart takes issue with the ALJ's decision not to admit an Appeals Council order as evidence. The Appeals Council order provides that "'superficial interaction' is a term that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind, and quality of social interactions, and indicates that the claimant could not have sustained more than

shallow or cursory interactions with others." (ECF #8-1 at PageID 2649-50). Ms. Eberhart insists the ALJ should have admitted the order and attempted to address it, and the failure to do so warrants remand. (ECF #8 at PageID 2643). Ms. Eberhart cites no case law or regulations that require an ALJ determining a claimant's RFC to consider a definition from a separate, unrelated case. Indeed, numerous courts have concluded that the Appeals Council's definition in a remand order for an unrelated case is *not* an official definition by the Commissioner that is binding on it at large or on this Court. *See Stephen D.*, 2023 WL 4991918, at *14 (concluding that "a single Appeals Council order in an unrelated case is not binding on the Commissioner and has no precedential value beyond the case in which it was entered"); *Tammy W. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1196, 2024 WL 4284251, at *4 (S.D. Ohio Sept. 25, 2024) (holding the ALJ was not bound by the Appeals Council's definition of the term "superficial" from an unrelated case). The ALJ was therefore not required to admit the order or address it.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: September 15, 2026



DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).